46 N.J. Super. 222 (1957)
134 A.2d 463
ANDREW J. KUFTA, PLAINTIFF,
v.
CECIL HUGHSON AND VERNA B. HUGHSON, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided August 23, 1957.
*224 Mr. Douglas C. Baker, attorney for plaintiff.
Messrs. Eisenberg & Spicer, attorneys for defendants.
CONFORD, J.A.D.
Defendants move for summary judgment "on the ground that there is no genuine issue as to any material fact and that defendants are entitled to judgment *225 as a matter of law." The action is by a vendee for specific performance of an agreement for the sale of certain real property, inclusive of a business consisting of a "milk bar," situated in the Township of Union. Defendants submit no affidavits; plaintiff does. The issue for the court thus devolves into the question as to whether or not, assuming the truth of all of the facts, and of any fair inferences therefrom, set forth in the affidavits relied upon by plaintiff, judgment must nevertheless be entered for the defendants as a matter of law. Defendants' position is based upon the statute of frauds (R.S. 25:1-5) in that the only writing relied upon by the plaintiff is not signed by the defendants or by any other person authorized so to do on their behalf.
The following factual situation emerges from the affidavits filed by plaintiff. On March 7, 1957 plaintiff was introduced to the defendant Cecil Hughson by a third person as a prospective purchaser of his milk bar, known as "Forsgate Milk Bar," and of the real property upon which it is conducted. On March 10, 1957 plaintiff brought his wife to inspect the property, and on March 11, 1957 plaintiff and the defendants "shook hands" at the home of the latter on an arrangement calling for a purchase price of $65,000, payable $12,000 down and $53,000 by mortgage payable in monthly installments over a 15-year period, settlement to take place April 1, 1957. Plaintiff had first been permitted to examine the books of account of the business after tendering a $100 check "as a binder, to show our good faith." The only condition to be met was approval of the deal and release of a purchase option by Forsgate Farms, in Jamesburg, New Jersey.
On March 16, 1957 the parties met, went to Jamesburg and procured the necessary concurrence by Forsgate Farms. The same day they went to the Hughson home, and the defendant Verna B. Hughson, wife of Cecil, "typed up on her typewriter the memorandum of our agreement and we all shook hands." The memorandum, which was not signed by any one, reads as follows:
*226 "Selling to Andrew J. Kufta one hundred fifty (150) feet on Morris Avenue, one hundred twenty five (125) feet on Lehigh Avenue, ground, building, lock, stock and barrel. Price Sixty-five thousand (65,000) dollars, down payment twelve (sic) thousand (12,000) dollars, balance to be paid in fifteen years or less at five per cent (5%) interest, payable monthly plus monthly payment on taxes.
 Date for settlement, March 30, 1957.
 Life insurance to cover mortgage.
 Myles Morrison
 7 West Grand Street
 Elizabeth N J
 Douglas Baker
 1172 Raymond Blvd
 Newark N J"
Messrs. Morrison and Baker were to be the attorneys for the parties.
The same day (March 16) a representative of defendants returned the $100 check to plaintiff "as no longer needed since everything had been mutually agreed upon." On that day, moreover, Cecil Hughson suggested plaintiff give up his job and attend at the milk bar beginning March 25, 1957 so that he might become familiar with the operation of the business. On March 18, 1957 plaintiff gave notice to his employer he would quit on March 22, 1957. On March 20, 1957 defendants' representative called to say defendants had a better offer for the property, and he offered plaintiff $1,000, and, later in the day, $2,000, for a cancellation of the agreement, but Cecil Hughson disclaimed knowledge of these matters the next day. On March 28, 1957, however, he phoned plaintiff to say the deal was off.
Plaintiff was not able to return to his job until April 22, 1957. His wife, who was to assist plaintiff with the business, also gave notice of leaving her employment but was out of work only one week. His daughter, who also planned to work for plaintiff at the milk bar, left her job March 21, 1957 and was not able to regain it until June 13, 1957. Before defendants repudiated the agreement, plaintiff "made arrangements" with a savings and loan association for a mortgage loan on his home to help finance the purchase, and his wife "arranged" to sell the home for $15,000. The affidavits do not indicate the incurrence by plaintiff of any *227 liability or appreciable expense in connection with either the proposed loan or sale. Neither the loan nor sale appears to have been consummated.
Plaintiff resists the motion on these grounds: (a) the memorandum satisfied the statute of frauds; (b) part performance took the transaction out of the statute; (c) defendants are equitably estopped to plead the statute; and (d) at all events, the action must be tried as to the claim for damages in respect to the default in the agreement to sell the business, the statute not applying thereto. These contentions are considered in the order stated.
1. The argument is that the typing by defendant Verna Hughson and the subsequent delivery to plaintiff's attorney of the memorandum sufficiently identified defendants with it to dispense with the necessity of a signature. Weber v. De Cecco, 1 N.J. Super. 353 (Ch. Div. 1948), is relied upon. The case is not in point. It was there held that the statutory requirement of a signature on the writing by the person to be charged was met where the agreement in question, a renewal of an existing lease, was concurred in by the lessor through his typing in over his signature on the original lease of the words "renewed for sixty months (60) from the first day of September, 1944." This was held to amount to an adoption by the lessor of the existing signature in relation to the renewal term. Nothing of that nature appears here. Not even the names of defendants, much less their signatures, appear on the paper writing. Plaintiff's citation of McEnaney v. Spedick, 13 N.J. Super. 37 (App. Div. 1951), is not relevant.
2. Considerable confusion has attended the formulation of the rationale of the rule by which "part performance" saves for the remedy of specific performance an agreement otherwise not in compliance with the statute of frauds. Support can be found for the theories (a) that acts which are consistent only with the existence of a contract suffice to dispel the mischief the statute aims at, and (b) that acts which would amount to the visitation of an equitable fraud upon the doer if the statute were successfully invoked *228 will defeat its application. 2 Williston, Contracts (1936), § 494, pp. 1430, 1431; 3 American Law of Property (1952), § 11.7, p. 28. The latter theory pervades the New Jersey cases: Cauco v. Galante, 6 N.J. 128, 137-138 (1951); Vreeland v. Vreeland, 53 N.J. Eq. 387 (Ch. 1895); Van Duyne v. Vreeland, 12 N.J. Eq. 142 (Ch. 1858); Johnson v. Hubbell, 10 N.J. Eq. 332 (Ch. 1855); Delnero v. Serra, 2 N.J. Super. 350, 352 (Ch. Div. 1949); Cooper v. Carlisle, 17 N.J. Eq. 525 (E. & A. 1866). In this view, even if the acts of a plaintiff purchaser clearly demonstrate the existence of a consensual agreement, they will not suffice to avoid the statute and permit award of specific performance if plaintiff has not substantially changed his position to his detriment in a degree not compensable by restitution or damages. Cooper v. Colson, 66 N.J. Eq. 328 (E. & A. 1904); Corbin, Contracts (1 Vol. ed. 1952), § 431, pp. 440, 441. For this reason, payment of the purchase price is not alone sufficient part performance, Cauco v. Galante, supra (6 N.J. at page 137). In the same vein, the acts done in partial performance must have been performed in reasonable reliance upon defendants' fulfillment of their contract. Corbin, op. cit. supra, § 426, p. 437.
It is observable that the term, "part performance," is not to be taken to mean, as might be supposed at first blush, performance by the plaintiff of what is due from him under the contract. The taking of possession of the land by the purchaser with the assent of the vendor, for example, where coupled with payment of part or all of the purchase price, is held sufficient, as is also the making of valuable improvements on the land by the purchaser. See Restatement, Contracts, § 197, comment b; Corbin, op. cit., supra, § 430, p. 440. While the Restatement limits the doctrine to the instances just noted, such a constriction is not generally recognized by the cases. See Annotation, 101 A.L.R. 923 (1936); 2 American Law of Property, op. cit., supra, § 11.7, p. 27; Cauco v. Galante, supra.
In specific reference to the case at hand, however, no New Jersey case is discoverable in which part *229 performance has been successfully predicated upon acts neither in performance or execution of the agreement nor in enjoyment of rights dependent upon its existence. In Cauco v. Galante, supra, relied upon by plaintiff, the plaintiff's oral agreement was to sell her property and advance the proceeds of the sale to defendant's decedent in return for a mortgage on other property of the latter. She was held entitled to specific performance on the basis that the undertaking of the plaintiff encompassed both the sale of the property and the advancement of the funds (6 N.J. at page 137). The principle under examination is more frequently stated in the form that the acts relied upon must be other than ancillary or merely preparatory to the contract. Pomeroy states that "the following acts do not constitute a part performance within the doctrine: acts done prior to the contract; acts merely preparatory or ancillary to the agreement, such as delivering abstract of title, measuring the land, drawing up deeds, etc.; * * *." 4 Pomeroy, Equity Jurisprudence (5th ed. 1941), § 1409, p. 1057. In 49 Am. Jur., Statute of Frauds, § 431, p. 738, it is stated that "giving up a present position, employment, business or profession, in order to take possession of the land, while referable to and induced by the contract, does not, standing alone, constitute part performance * * *." See also Annotation, 125 A.L.R. 399 (1940).
Such expenses, if any, as the present plaintiff incurred in preparation for taking over the property and business purchased cannot avail him in this action, under the principles stated. The New Jersey cases are in accord. Richman v. Richman, 117 N.J. Eq. 226, 230 (Ch. 1934); Nibert v. Baghurst, 47 N.J. Eq. 201, 205 (Ch. 1890); Charlton v. The Columbia Real Estate Company, 64 N.J. Eq. 631, 639 (Ch. 1903), reversed on other grounds 67 N.J. Eq. 629 (E. & A. 1905); De Marco v. Estlow, 18 N.J. Super. 30 (Ch. Div. 1952), affirmed 21 N.J. Super. 356 (App. Div. 1952). The losses of plaintiff's wife and daughter are of no consequence for the additional reason that they are strangers to the action.
*230 3. There is no indication in the New Jersey authorities that the bar of the statute of frauds may be avoided on the theory of estoppel by circumstances which would not qualify as part performance within the cases hereinabove discussed. In any event, estoppel requires the showing of an assumption of a position by a representation or act by one party upon which the other has rightfully relied to an extent which would render unjust its repudiation by the first party. New Jersey Suburban Water Co. v. Town of Harrison, 122 N.J.L. 189, 194 (E. & A. 1939); Mattia v. Northern Ins. Co. of New York, 35 N.J. Super. 503, 510 (App. Div. 1955). In the present case no other conduct by the defendants is shown than the making of the parol agreement, the affirmance of its subsistence for a period of 12 days, and a suggestion that plaintiff attend the business sold to familiarize himself with it in advance of closing. Clearly the mere making of the oral agreement or the refusal to abide by it cannot constitute the basis for an estoppel, for in such case the statute would be nullified. See 3 American Law of Property, op. cit., supra, § 11.6, p. 23; Annotation, 75 A.L.R. 650 (1931). Nor do we have here a case where defendant represents to the plaintiff that the statute has been complied with and plaintiff relies thereon. See 3 American Law of Property, op. cit., supra, § 11.6, p. 25.
There need not be pursued the inquiry as to whether the nature of defendants' conduct between the date of making of the oral agreement and its repudiation is such as will raise an estoppel against invocation of the statute in the present context, one which, as seen, does not admit of the applicability of the exception of part performance. This is because there does not appear here the requisite for equitable estoppel that the injured party shall have changed his position for the worse in reliance thereon. See 3 Pomeroy, op. cit., supra, § 812, pp. 231, 232. In the first place, such acts of reliance as are invoked by plaintiff are clearly referable to the making of the agreement, rather than to defendants' subsequent conduct. In fact that conduct was more *231 calculated to inspire distrust than reliance. But of more importance, no substantial change of position on the part of plaintiff is disclosed by the affidavits. Plaintiff merely lost some time at work and incurred some preparatory trouble and expense of apparently no greater than nominal extent. See Bogan v. Wiley, 72 Cal. App.2d 533, 164 P.2d 912 (D.C. App. 1946); Murdock v. Swanson, 85 Cal. App.2d 380, 193 P.2d 81 (D.C. App. 1948); but cf. Kaye v. Melzer, 87 Cal. App.2d 299, 197 P.2d 50 (D.C. App. 1948). There is not shown a substantially detrimental change of plaintiff's position. Defendants are not estopped to raise the bar of the statute.
4. If a parol contract partly within the statute of frauds is entire and indivisible, the whole contract is unenforceable. 49 Am. Jur., Statute of Frauds, § 545, p. 847; 37 C.J.S. Frauds Statute of § 230, p. 729; Annotation, 71 A.L.R. 479, 581 (1931). This rule is applicable to oral contracts for the sale of realty and personalty. Kent v. Phenix Art Metal Co., 69 N.J.L. 532 (Sup. Ct. 1903); and see Colalillo v. Kaiser, 5 N.J. Misc. 595 (Sup. Ct. 1927). The instant agreement was plainly an integral contract for the sale of the land, business and stock in trade as an entirety. The claim of the plaintiff for damages in respect to the default as to the personalty cannot survive the bar of the statute of frauds against the enforceability of the agreement as a whole.
Summary judgment will be entered in favor of defendants, but without costs.